IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CURTIS VAUGHN JACKSON, JR.,　　　　No. 2:15-CV-1675-JAM-CMK-P

　　　　Plaintiff,

　　vs.　　　　　　　　　　　　　　　FINDINGS AND RECOMMENDATIONS

CARMELINO L. GALANG, et al.,

　　　　Defendants.

　　　　　　　　　　　　　　　　　/

　　　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are defendants' motions to dismiss (Docs. 33 and 40).

**I. PLAINTIFF'S ALLEGATIONS**

　　　　　　This action proceeds on the original complaint. Plaintiff names the following as defendants: Galang; Wolfson; Smiley; Dator; Horowitz; and Wong. According to plaintiff, he suffered a "grade three" separation of his right shoulder on September 20, 2014. Plaintiff states that an "urgent referral" for an outside orthopedic consult was placed that same day by the emergency room doctor. Plaintiff was seen by defendant Galang, a doctor at San Joaquin

1

General Hospital, on September 26, 2014.

Plaintiff states that he was seen on December 1, 2014, by defendant Wong, apparently a prison doctor, to discuss the scheduling of plaintiff's surgery. Plaintiff alleges that defendant Wong "denied my previously prescribed medication treatment by refusal to renew dose of morphine at 30 mg twice a day which was managing my pain level." Plaintiff claims that defendant Wong's intentional interference left him in severe pain. Plaintiff alleges that defendant Wong knew that plaintiff would suffer pain if his dose of pain medication was decreased.

Plaintiff alleges that defendant Smiley, a doctor at the prison, "delayed to act in a urgent manner as ordered by emergency room. . . ." Plaintiff adds that defendant Smiley delayed three months before approving surgery which occurred on December 18, 2014. Plaintiff claims that he was seen by defendant Horowitz on December 23, 2014, for a post-operative follow up and that defendant Horowitz refused to prescribe antibiotics.

Plaintiff claims that defendant Dator, apparently a prison nurse, failed to change the dressings on his wound following the first surgery and that he was left in bloody dressings for six days. He also claims that, following the first surgery, he "experienced severe increased pain and swelling with a large lump sticking up in right shoulder approximately 10 days after surgery." Plaintiff states that he notified "medical officials" on January 3, 2015, and again on January 5, 2015, requesting to see a doctor but that he was not seen until January 7, 2015, when defendant Dator "finally call plaintiff to medical. . . ." According to plaintiff:

> Defendant M. Dator stated to me he refused to see me in 24-48 hours after required time limits because Plaintiff complains to much. Defendant M. Dator, RN, refuse to forward by case to (TTA) emergency room for further evaluation and x-rays. Instead, defendant sent me back to cell without medical treatment, and a large plate sticking up from my right shoulder and having breakthrough pain.

///

///

2

| | |
|---|---|
| 1 | Next, plaintiff states that defendant Galang performed a second surgery on |
| 2 | January 15, 2015, because the first had been unsuccessful.  Plaintiff claims that defendant Smiley |
| 3 | scheduled plaintiff for a post-operative outside follow up on January 30, 2015.  At that time, x- |
| 4 | rays were obtained which, according to plaintiff, showed that the January 15, 2015, second |
| 5 | surgery had also been unsuccessful.  According to plaintiff, on January 23, 2015, he complained |
| 6 | to defendant Horowitz that the second surgery was also unsuccessful and that "the plate was |
| 7 | displaced."  Plaintiff claims that defendant Horowitz "misdiagnose" the plate as merely scar |
| 8 | tissue.  Defendant Horowitz continued plaintiff's pain medication but refused to order further x- |
| 9 | rays. |
| 10 | Plaintiff was scheduled for a further outside follow up with defendant Galang on |
| 11 | February 4, 2015.  Plaintiff states that this follow up never occurred because he was admitted to |
| 12 | the hospital crisis care unit on February 3, 2015, for depression and emotional issues.  Elsewhere |
| 13 | in the complaint, however, plaintiff references a follow up which took place on January 30, 2015, |
| 14 | at which time he was told that a third surgery was required.  This third surgery apparently took |
| 15 | place in April 2015 and was successful. |
| 16 | Plaintiff was returned to prison on February 5, 2015.  Plaintiff alleges that another |
| 17 | referral for an outside follow up was placed on February 13, 2015, but was cancelled on February |
| 18 | 27, 2015, when plaintiff was once again transferred to the hospital for psychiatric concerns. |
| 19 | Plaintiff alleges that defendant Wolfson failed to adequately supervise defendant Galang who, |
| 20 | according to plaintiff, performed two failed surgeries.  He also claims that the pain medication |
| 21 | prescribed by defendant Galang was ineffective and that defendant Galang "was aware that |
| 22 | Plaintiff required different treatment or increase dose of current medication and did not provide |
| 23 | adequate treatment. . . ." |
| 24 | / / / |
| 25 | / / / |
| 26 | / / / |

Next, plaintiff states that he was seen again at San Joaquin General Hospital by defendant Galang on March 10, 2015. X-rays were obtained and plaintiff was informed that he would need a third surgery. According to plaintiff, defendant Galang "admitted to me he did not know how to do this kind of surgery and he referring my case to surgeon Dowbak, M.D." Plaintiff claims that defendant Galang "delayed medical care by scheduling my third surgery 4-14-2015 approximately 30 days later the wait cause me increase pain and no range of motion."

Next, plaintiff states that he was seen by defendant Horowitz in June 2015 following his return to prison from a psychological hospitalization. According to plaintiff, his ongoing pain "drove me to get emotionally and psychologically." Defendant Horowitz examined plaintiff's shoulder, obtained new x-rays, and switched plaintiff's pain medication. Plaintiff claims that this "course of treatment was not reasonable" and that defendant Horowitz subjected him to additional pain by changing his pain medications. Plaintiff adds: "Defendant Horowitz was deliberate indifference to my serious medial need by retaliating against plaintiff for appealing this issue on a 602 which was partially granted to keep my morphine 30 mg twice a day by defendant Smiley." Plaintiff alleges that defendant Horowitz interfered with his previously prescribed course of treatment for the purpose of causing him pain.

Plaintiff next alleges that he submitted a medical request form on June 20, 2015, complaining of pain and withdrawal symptoms following discontinuation of morphine by defendant Horowitz. According to plaintiff, he was not weaned off the morphine, which was abruptly discontinued by defendant Horowitz on June 19, 2015. Having received no response to his medical request form, plaintiff submitted another medical request form on June 22, 2015. Plaintiff states that he it was not until June 24, 2015, when he was seen by a nurse, defendant Dator. Plaintiff states that, when he asked defendant Dator about the first medical request form, "Defendant M. Dator became angry." According to plaintiff, he requested to be sent to an outside emergency room for evaluation, but defendant Dator refused. Plaintiff alleges that defendant Dator "delayed plaintiff adequate medical care by making me wait three weeks to see a

4

doctor all while my symptoms got worser and I was in severe pain that the current medication was not effective."

## II. STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

Defendants' argue that the complaint fails to plead facts sufficient to state a claim against any of them for deliberate indifference to a serious medical need. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter,

sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.

7

See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

### A.     Defendants Galang and Wolfson

Defendants Galang and Wolfson, whom plaintiff alleges are doctors at San Joaquin General Hospital, argue that plaintiff has failed to allege facts establishing that they are state actors subject to liability under § 1983. The court does not agree. Plaintiff alleges that he was referred to San Joaquin General Hospital by prison officials following his September 2014 shoulder injury. It is reasonable to infer that the referral was made pursuant to some kind of agreement between the prison and the hospital. Such an agreement would render defendants Galang and Wolfson state actors for purposes of their treatment of plaintiff. See West v. Atkins, 487 U.S. 42 (1988); Lopez v. Dep't of Health Servs., 939 F.2d 881 (9th Cir. 1991) (per curiam).

Defendants Galang and Wolfson also argue that, even if they are state actors, the complaint fails to state a cognizable Eighth Amendment claim of deliberate indifference. As to defendant Galang, plaintiff alleges:

> 10)   On 9-26-14 I spoke with Defendant C. Galang surgeon approximately 6 days after my injury.[1]
>
> * * *
>
> 14)   Plaintiff was re-schedule on 2-4-15 to follow-up with Defendant C. Galang, MD, to schedule another surgery. . . .
>
> * * *

---

[1] Documents attached to the complaint indicate that defendant Galang performed surgery on plaintiff's shoulder on December 18, 2014.

8

20) Plaintiff suffered a injury to his right shoulder in a football game. Plaintiff was referred to San Joaquin General Hospital for a urgent orthopedic consultation. Plaintiff meant [sic] with Defendant C. Galang, MD. He recommended I have surgery.

21) Defendant C. Galang, MD, then told me I need urgent reconstruction surgery to repair ligament. . . .

\* \* \*

23) Defendant C. Galang was aware that Plaintiff required different treatment or increase dose of current medication and did not provide adequate treatment knowing I would have breakthrough severe pain post operative for at least 4 to 6 weeks and future.

24) Defendant C. Galang, MD . . . did not order dressing changes. . . .

25) Defendant went back to S.J.G.H. for a 2 week follow up on 1-6-15. Defendant C. Galang MD took an x-ray and it showed the plate was loose and all three screw was out. The ligament was loosen also causing a large lump in my right shoulder that was very painful.

26) Defendant C. Galang then advised Plaintiff I would need a second reconstruction surgery. . . .

27) Defendant C. Galang schedule the second procedure on 1-15-15. At that surgery the Defendant inserted a large plate with five screws and tighten down the ligament. . . .

\* \* \*

30) Defendant C. Galang was incompetent to perform a grade three separation procedure and committed medical malpractice that cause plaintiff personal injury.

31) Defendant C. Galang was deliberate and indifferent to my serious medical need and acted with culpable state of mind to a foreseeable risk to my health and safety by refusing to take reasonable measure to abate the risk involved and to preserve life.

\* \* \*

41) Defendant C. Galang, MD, recommendation was Keflex 500mg T.I.D. antibiotic. . . .

/ / /

| | | |
|---|---|---|
| 1 | 42) | Defendant C. Galang still performed reconstruction surgery on a infected shoulder in which I believe played a part in the second failed surgery. |
| 2 | | |
| 3 | | * * * |
| 4 | 54) | On 3-10-15 Plaintiff went to San Joaquin General Hospital. I meant [sic] with Defendant C. Galang. At that interview I took a x-ray it was unchanged. |
| 5 | | |
| 6 | 55) | Defendant C. Galang advised me I would need a third procedure because the plate was displaced. |
| 7 | | |
| 8 | 56) | Plaintiff then tried to discuss the procedure. Defendant C. Galang admitted to me he did not know how to do this kind of surgery and he referring my case to surgeon Dowbak, MD. Defendant C. Galang knew I had a serious injury and needed urgent surgery and a delay for a reasonable response would be substantial risk to my health and being in sever pain. |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | 57) | Defendant C. Galang delayed medical care by scheduling my third surgery 4-14-15 approximately 30 days later. The wait cause me increase pain and no range of motion. |
| 13 | | |

As defendants note: "These allegations only serve to admit that plaintiff was provided extensive medical care." The court agrees and concludes that, at best, plaintiff's claim against defendant Galang is based on plaintiff's contention that defendant Galang was grossly negligent in his treatment. Plaintiff's formulaic recitation of the words "deliberate" and "indifferent" and the phrase "culpable state of mind" are insufficient.

To the extent plaintiff alleges that defendant Galang is liable for a 30-day delay in scheduling his third surgery, such a claim is not plausible on the face of the complaint. Notably, plaintiff's allegations indicate that defendant Galang would not have been responsible for determining whether surgery would be approved and, if so, when it would take place. In any event, plaintiff has not alleged that the delay caused further injury. See McGuckin, 974 F.2d at 1060. While plaintiff contends that the delay "cause me increase pain and no range of motion," elsewhere in the complaint plaintiff alleges that a third surgery was successful. Moreover, as plaintiff's allegations make clear, the injuries and damages he sustained were the result of the

negligence of defendant Galang and not any delay.

As to defendant Wolfson, plaintiff alleges:

> 17) Defendant N. Wolfson fail to properly supervise Defendant C. Galang because after having surgery by defendant . Galang on 12-18-14 due to complication with not knowing how to insert a plate and properly screw the plate down and put the ligament on tight enough where it came loose also.
>
> 18) Defendant N. Wolfson approve Defendant to perform a second reconstructive surgery to my right shoulder on 1-15-15 which also fail and left Plaintiff in severe increase pain emotional distress and psychologically distraught and fear of safety knowing I needed a third surgery.
>
> 19) Defendant N. Wolfson was deliberate and indifference to Plaintiff serious medical needs.

Based on these allegations, plaintiff is basing liability either on the theory that defendant Wolfson failed to properly train and supervise defendant Galang, or the theory that defendant Wolfson was negligent in allowing defendant Galang to perform a second surgery.

Under either theory, plaintiff's claim is not cognizable. As indicated above, negligence does not rise to the level of a civil rights claim under § 1983. Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). While a supervisor may be held liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, see id., as discussed above, plaintiff has failed to allege facts establishing that defendant Galang – whom defendant Wolfson is alleged to have supervised – violated plaintiff's civil rights with respect to the medical care he provided.

The court concludes that plaintiff has failed to state a cognizable claim against defendants Galang or Wolfson, who should be dismissed with prejudice.

///

///

B. **Defendant Smiley**

The essence of plaintiff's claim against defendant Smiley is that he is responsible for the three-month delay between the date of plaintiff's shoulder injury and the first surgery. While delay in providing medical treatment, or interference with medical treatment, may constitute deliberate indifference, see Lopez, 203 F.3d at 1131, plaintiff has not alleged facts to establish that the delay led to further injury, see McGuckin, 974 F.2d at 1060. Quite to the contrary, plaintiff alleges that subsequent surgeries were required due to the negligence of defendant Galang in performing the first surgery and not because of any delay. The court agrees with defendants that defendant Smiley should be dismissed with prejudice.

C. **Defendant Horowitz**

As to defendant Horowitz, a prison doctor, plaintiff alleges:

> 24) . . .Defendant E. Horowitz MD did not order dressing changes. . . .
>
> * * *
>
> 27) . . .Approximately 7 days later on 1-23-15 Plaintiff notified Defendant E. Horowitz that plate was displaced.
>
> * * *
>
> 39) On 12-23-14 Plaintiff meant [sic] with primary care provide Defendant E. Horowitz, MD, regarding post operation care. Defendant E. Horowitz acted under the color of law by refusing to prescribe plaintiff antibiotic after first procedure on 12-18-14.
>
> 40) Plaintiff explained to Defendant E. Horowitz I need antibiotic to prevent an infection. Defendant E. Horowitz stated don't worry and don't tell her how to do her job! Plaintiff left the room under emotional distress, and in pain & suffering.
>
> 41) . . .Defendant E. Horowitz still refuse to provide Plaintiff with adequate medical care. . . .
>
> * * *

///

43) Defendant E. Horowitz refusal to order antibiotic was medically unacceptable and unreasonable considering the circumstances. Defendant E. Horowitz chose this course of treatment in conscious disregard to excessive risk to Plaintiff health and safety, and further injury or losing my arm. The unnecessary wanton infliction of pain.

44) Plaintiff also inquired about dressing changes. Defendant Horowitz refuse that request, also and left Plaintiff with dirty and bloody dressing for approximately 6 days until Plaintiff was treated. . . .

45) Defendant E. Horowitz cause Plaintiff personal injury by refusing to prescribe antibiotic. Defendant E. Horowitz mal-practice was wrongful and intentional and well thought out to be negligent and violates by constitutional rights. . . .

46) On 1-23-15 after Plaintiff surgery on 1-15-15 Plaintiff again meant [sic] with Defendant E. Horowitz for post operation follow-up. Plaintiff was experiencing a great deal of discomfort and increase pain and another large lump on my right shoulder like after the first procedure 12-18-14.

47) Plaintiff notified Defendant E. Horowitz, MD. She examined my shoulder and seen the large lump which was the plate that came off again. Defendant E. Horowitz, MD, misdiagnose the large lump as scar tissues and ordered the continuation of my pain medication to decrease (tapper [sic] down) and refuse to take an x-ray to further investigate my serious medical condition.

48) Defendant E. Horowitz denied Plaintiff adequate medical care/treatment. The Defendant wrongful acts was malicious also intentional and negligence. The lack of care amount to "deliberate indifference."

\* \* \*

60) On 6-9-15 Plaintiff meant [sit] with Defendant E. Horowitz. At that time Defendant E. Horowitz examined my right shoulder, ordered a x-ray. Plaintiff told Defendant E. Horowitz I was in still severe pain which my current dose of pain medication 30mg morphine three times a day was managing my pain.

61) Defendant E. Horowitz then ordered my pain medication to discontinue after expiration date and order a different pain medication call methadone 5mg twice a day which is not equivalent of my previous prescribe treatment I was getting and this course of treatment was not reasonable response. Defendant E. Horowitz knew by changing my medication it

13

> 62) Defendant E. Horowitz was deliberate indifference to my serious medical need by retaliating against Plaintiff for appealing this issue on a 602 which was partially granted to keep my morphine 30mg twice a day by Defendant D. Smiley CEO on second level. . . .

As with defendant Galang, plaintiff's allegations as to defendant Horowitz do not rise to the level of a civil rights violation cognizable under § 1983. Plaintiff repeatedly indicates that his claim against defendant Horowitz is based on the theory that she was negligent in rendering him care. Plaintiff also repeatedly states that he in fact received care from defendant Horowitz, but that he disagreed with her course of treatment, including the decision to switch plaintiff from morphine to methadone for pain.

Finally, plaintiff's reference to retaliation is not plausible based on the facts alleged. Specifically, plaintiff alleges that defendant Horowitz discontinued morphine at the June 9, 2015, visit. Plaintiff then states that he appealed "this issue" and that the appeal was partially granted by defendant Smiley. On these allegations, it would be impossible for defendant Horowitz to have retaliated against plaintiff in June 2015 because of an appeal filed by plaintiff after that date.

Plaintiff has failed to state any cognizable claims against defendant Horowitz, who should be dismissed with prejudice.

### D. Defendant Dator

As to defendant Dator, a prison nurse, plaintiff alleges:

> 24) . . .Defendant M. Dator acted under the color of law by refusing to change bloody dressing. Plaintiff was left bloody for approximately six days before I got medical attention.
>
> * * *
>
> 33) Defendant M. Dator, RN, denied Plaintiff adequate medical care treatment post operative care from 12-23-14 thru 1-15-15.

* * *

35) Plaintiff notified medical officials on 1-2-15 via medical form CDCR #7362. Two days go by without medical treatment. So Plaintiff submitted a second CDCR 7362 on 1-5-15 and Defendant M. Dator, RN, finally call Plaintiff to medical to address my medical needs on 1-7-15.

36) Defendant M. Dator stated to me he refuse to see me in 24-48 hours after required time limits because Plaintiff complains to much. Defendant M. Dator, RN, refuse to forward my case to (TTA) emergency room for further evaluation and x-rays. Instead Defendant sent me back to cell without medical treatment, and a large plate sticking up from my right shoulder and having breakthrough pain.

37) Defendant M. Dator RN was refusing me adequate medical post operative care by refusing me dressing changes, for approximately 5 days Defendant M. Dator denied my request to clean the bloody dressing. Plaintiff put in a medical CDCR #7362 form then Defendant complied with my request stating there's no doctor orders from Defendant C. Galang or Defendant E. Horowitz, MD.

* * *

69) On 6-24-15 Defendant M. Dator finally screened Plaintiff to address my medical needs. At that visit Plaintiff inquired about the first medical request I submitted on 6-20-15. Defendant M. Dator stated he did not know where it was.

70) Plaintiff then asked him to track it down with the bar code number. Defendant M. Dator became angry. Its Plaintiff information and belief defendant Dator, RN, threw the 7362 medical request because it was a clear violation of policy & procedure for not screening Plaintiff in a timely manner.

71) Plaintiff tried to abate the issue of my serious medical needs with asking Defendant M. Dator RN to send my case to (TTA) emergency room to be evaluated by the on call doctor so I could possibly get prescribe the appropriate medication to stop the withdrawal and control the pain I was experiencing.

72) Defendant RN Dator refuse Plaintiff to consult with on call doctor. Instead he delayed Plaintiff adequate medical care by making me wait three week to see a doctor all while my symptoms got worser and I was in severe pain that the current medication was not effective.

15

Citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334-35 (9th Cir. 1990), defendants primarily argue that plaintiff has failed to state a claim with respect to defendant Dator's alleged failure to change bloody dressings because "a failure to treat or delay in treatment does not state an Eighth Amendment violation, unless that failure or delay caused a substantial harm." While the court agrees with defendants insofar as a prisoner must allege facts showing substantial harm resulting from alleged delay in providing medical care, the court does not agree with defendants as to allegations of a failure to provide medical care. The latter category of claims does not require allegations of further substantial harm to be cognizable. In this case, the court must accept plaintiff's allegations as true and finds that plaintiff's allegations that defendant Dator failed to change bloody dressings following surgery state a cognizable claim for relief.

E. **Defendant Wong**

As to defendant Wong, a prison doctor, plaintiff alleges:

> 52) Defendant Sam Wong-Do, MD, denied my previously prescribed medication treatment by refusal to renew dose of morphine at 30mg twice a day which was managing my pain level. That intentional interfering with the treatment once prescribed before I had my first surgery left Plaintiff in severe pain.
>
> 53) Defendant Sam Wong-Do, MD, was deliberate indifference because he knew I had a serous medical condition and refuse to act reasonable caused unnecessary wonton infliction of pain. Defendant S. Wong-Do knew if he decrease my medication it would cause me pain. He saw all "MD" re-newed 30mg, by Defendant Wong-Do taken my meds he intended to do harm.

The court agrees with defendants that plaintiff's allegations that defendant Wong changed his pain medication from morphine to methadone does not state a cognizable claim. See <u>Toguchi v. Chung</u>, 391 F.2d 1051 (9th Cir. 2004).

/ / /

/ / /

/ / /

16

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. The motion to dismiss filed by Defendants Galang and Wolfson (Doc. 33) be granted;

2. The motion to dismiss filed by the remaining defendants (Doc. 40) be denied in part as to defendant Dator and granted in part as to all other defendants; and

3. This action proceed against defendant Dator only, who should be directed to file an answer.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 7, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE